NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

AB&M ENTERPRISES, INC.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12014
Trial Court No. 3AN-12-2437 CR

O P I N I O N

No. 2518 — September 2, 2016

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael R. Spaan, Judge.

Appearances: Kevin T. Fitzgerald, Ingaldson Fitzgerald, P.C., Anchorage, for the Appellant. James Fayette, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

AB&M Enterprises, a business corporation, ran the Rumrunners Old Towne Bar and Grill in downtown Anchorage. The corporation was convicted of fourth-degree

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

assault based on the conduct of two of its security personnel. The State's case against the corporation was based on the following evidence (presented here in the light most favorable to the State):

An unruly patron named Johnny Brown assaulted one of the Rumrunners security guards, Murville Lampkin. Various members of the security staff subdued Brown and handcuffed him. At this point, Lampkin and his supervisor, George Damassiotis (the head of security for Rumrunners) decided to take Brown to the security office in the basement of the bar.

As they boarded the elevator for the trip down to the security office, Damassiotis said to Lampkin either "Go for it," or "There are no cameras in here; he is all yours." Lampkin then "sucker-punched" Brown — punching him in the face without warning. This punch fractured the orbital bone surrounding Brown's left eye; repair of this injury required a surgical implant.

Lampkin, Damassiotis, and AB&M Enterprises were all charged with this assault — Lampkin because he was alleged to have personally committed the assault, Damassiotis because he was alleged to have encouraged Lampkin to commit the assault, and AB&M Enterprises under the theory that the corporation was responsible for Damassiotis's and Lampkin's conduct under AS 11.16.130.

*The law defining when a corporation can be convicted of a crime*

Under AS 11.16.130(a)(1), a corporation can be convicted of a criminal offense if the offense was committed through the conduct of an agent of the corporation, and either (A) the conduct at issue was within the scope of the agent's employment and was done in behalf of the corporation; or (B) the conduct was solicited, subsequently ratified, or subsequently adopted by the corporation.

Subsection (b) of this statute declares that, for these purposes, "agent" means a director or officer of the corporation, or any employee of the corporation, or any other person authorized to act in behalf of the corporation.

*The potential ways in which this statute applied to this case*

Under AS 11.16.130, the jury in this case could theoretically find AB&M guilty of the assault on Brown under three distinct theories.

First, the jurors could find that Lampkin assaulted Brown and that AB&M Enterprises was accountable for Lampkin's conduct under clause (A) of the statute — *i.e.*, under the theory that Lampkin was an employee of the corporation, that the assault on Brown was within the scope of Lampkin's employment, and that this assault was committed in behalf of the corporation.

Second, the jurors could find that Damassiotis was Lampkin's accomplice because Damassiotis abetted the assault on Brown (*i.e.*, by encouraging Lampkin to punch Brown), and that AB&M Enterprises was accountable for Damassiotis's conduct under clause (A) of the statute — *i.e.*, under the theory that Damassiotis was an employee of the corporation, that Damassiotis's act of abetting this assault was within the scope of Damassiotis's employment, and that Damassiotis's act of abetting the assault was done in behalf of the corporation.

Third and finally, the jurors could find that Damassiotis solicited Lampkin to commit the assault, and that AB&M Enterprises was accountable for this assault under clause (B) of the statute — *i.e.*, the clause that makes a corporation criminally liable for conduct of its agents if the corporation solicits the conduct.

*The problems with the jury instructions in this case*

Although the jury was instructed on both clauses (A) and (B) of the statute, the jury was not asked to specify which clause their verdict was based on. This means that if there is a problem with the jury instructions regarding *either* clause (A) *or* clause (B), we must reverse AB&M Enterprises' conviction — because we can not tell whether the jury based its decision on the flawed theory.

In the present case, we conclude that there are fatal flaws in the jury instructions relating to *both* clause (A) *and* clause (B) of AS 11.16.130.

*The flaw relating to clause (A) of AS 11.16.130(a)(1)*

To the extent that the jurors may have relied on clause (A) of the statute to find that AB&M Enterprises was criminally responsible for the conduct of either Lampkin or Damassiotis, the jurors would have had to conclude that Lampkin's or Damassiotis's conduct was "within the scope of [their] employment" and "was done in behalf of the corporation".

Jury Instruction 18 contained specific instructions on how the jurors were to determine whether an employee's conduct was within the scope of their employment. However, the final paragraph of Jury Instruction 18 incorrectly told the jurors that it was the State's burden to prove this element by a *preponderance of the evidence* — not beyond a reasonable doubt. Here is the concluding paragraph of the instruction:

> If you decide that it is more likely than not that Murville Lampkin's or George Damassiotis's acts were within the reasonable scope of what Murville Lampkin or George Damassiotis reasonably believed he was asked to do by AB&M Enterprises, Inc. and agreed to do, then AB&M

Enterprises, Inc. is legally responsible for the acts of Murville Lampkin or George Damassiotis.  Otherwise, [the corporation] is not legally responsible for those acts under this instruction.

AB&M Enterprises has not raised this error on appeal.  Nevertheless, this error is so fundamental that we can not overlook it.

When we brought this error to the attention of the parties at oral argument, the State's attorney did not argue that the error was harmless.  Rather, the State's attorney suggested that any error was waived because AB&M's attorney was the one who requested this instruction.  But on re-examination of the record, this turned out not to be true.

Because this jury instruction misstated the State's burden of proof, AB&M's conviction is improper to the extent that the jury may have relied on clause (A) of the statute.

*The flaw relating to clause (B) of AS 11.16.130*

To the extent that the jurors may have relied on clause (B) of the statute to find that AB&M Enterprises was criminally responsible for the assault on Brown, based on the evidence that George Damassiotis solicited Lampkin to commit this assault, the jurors would have had to conclude that Damassiotis's act of soliciting this assault was equivalent to *the corporation*'s having solicited the assault.  This is because, under clause (B) of the statute, the government was required to prove that the criminal conduct was solicited by AB&M Enterprises.

The jurors in the present case were never directly instructed on what the phrase "solicited by the corporation" meant.  Instead, they were told in a roundabout way

(through a combination of the initial jury instructions and the trial judge's answers to the jury's mid-deliberation questions) that a corporation is deemed to have solicited a crime if *any officer or employee* of the corporation solicited that crime.

This is an incorrect statement of law. As Professor LaFave explains in his treatise *Substantive Criminal Law*, corporate liability based on the solicitation of a criminal act is typically restricted to instances where the solicitation is made by a director or a "high managerial agent":

> [U]nder the Model Penal Code[,] a corporation may be convicted of the commission of an offense only if it was "authorized, requested, [or] commanded ... by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment." Many modern recodifications contain a provision along these lines. "High managerial agent" is defined in the [Model Penal] Code as "an officer of a corporation or ... any other agent of a corporation ... having duties of such responsibility that his conduct may fairly be assumed to represent the policy of the corporation." Some modern codes contain such a definition, while others include a broader definition encompassing both those who have responsibility as to the formulation of policy and those who supervise in a managerial capacity. Absent such legislation, courts sometimes take a somewhat broader approach encompassing at least some corporate employees below the supervisory level [if they are in a position of responsibility].

Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 13.5(c), Vol. 2, pp. 388-89 & n. 63.

The provision of AS 11.16.130 that deals with corporate liability based on the solicitation of a criminal act — subsection (a)(1)(B) — does not speak of directors, officers, or high-level managers. Rather, the statute declares that the solicitation must

be made "by the organization", without further explanation. But even this language suggests that corporations are not liable for any and all criminal acts solicited by any corporate "agent" — that is, solicited by any employee whatsoever.

We find it extremely unlikely that our legislature, by using the phrase "solicited ... by the organization", intended corporations to be held liable for crimes solicited by filing clerks and maintenance staff. Rather, the wording of our statute implicitly requires that the solicitation be done by someone who can reasonably claim some degree of managerial authority or responsibility within the corporation (even if they are not officially designated as a manager or supervisor).

We need not decide precisely what amount of managerial authority is required before a person's act of soliciting a crime can be deemed the corporation's act of soliciting a crime under clause (B) of the statute — because, in the present case, the jury was told that a solicitation made by *any employee* should be viewed as a solicitation made by the corporation. This was wrong.

*Conclusion*

The jury was wrongly instructed with regard to both clause (A) and clause (B) of AS 11.16.130(a)(1). Accordingly, AB&M Enterprises' conviction for fourth-degree assault is REVERSED.